| | | |
|---|---|---|
| STEVEN REID, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-249 |
| | ) | Judge Nora Barry Fischer/ |
| WAKEFIELD, Correctional Superintendent; | ) | Magistrate Judge Amy Reynolds Hay |
| HOFFMAN, Correctional Sergeant; | ) | |
| SAYLOR, Correctional Officer; | ) | |
| LANDER, Correctional Officer; | ) | |
| SHROYER, Correctional Officer; | ) | |
| KUHN, Correctional Officer; and | ) | |
| GUZZIE, Correctional Officer, | ) | |
| | ) | |
| Defendants | ) | RE    Dkt. [90] |

## REPORT AND RECOMMENDATION

### RECOMMENDATION

It is recommended that the Plaintiff's Motion for summary judgment, Dkt. [90] be denied.

### REPORT

This case has been the subject of a prior Report and Recommendation and memorandum opinion.

Familiarity with those proceedings is presumed. As a result of those proceedings, there are only three

remaining claims, all of which are brought pursuant to Section 1983 of the Civil Rights law. The first

claim is an Eighth Amendment excessive force claim against the seven defendants named in the caption.

The Eighth Amendment allegations contained in the complaint are as follows. On October 30, 2005,

Defendants Guzzie, Hoffman, Saylor, Shroyer, Kuhn and Lander (i.e., all of the defendants other than

Defendant Wakefield, who is the prison Superintendent), came to Steven Reid's ("Plaintiff") cell to

escort him and his cellmate out of their cell in order to conduct a search of their cell. Plaintiff and his cell

mate were cuffed and they were led out of their cell. As they were being escorted from out of the cell into the shower area, Plaintiff's right hand slipped out of the cuff and thereupon Defendants Guzzie, Hoffman, Saylor, and Shroyer grabbed Plaintiff's arm and then slammed him against the shower gate and took him down to the ground to re-handcuff him. Defendants Kuhn and Lander failed to intervene but instead assaulted Plaintiff's cellmate by taking him down to the ground.

The second claim is a claim that Defendant Wakefield was alerted to the fact that Plaintiff had been previously threatened by the defendants and that he failed to do anything to prevent the attack. Plaintiff alleges a failure to protect claim against Superintendent Wakefield.[1]

The third remaining claim is an Eighth Amendment conditions of confinement claim. Plaintiff contends that after the alleged attack by the six correctional officers, he was then placed in a "strip cell" which consisted of "no mattress, cosmetics, sheets, blanket or clothing, just a pair of underwear, also Plaintiff was served with a di[s]ciplinary charge for assaulting staff based on" the handcuff incident when Plaintiff alleges he was assaulted. Dkt. [13] at 7, ¶ 27.

**Applicable Legal Standard**

Summary judgment is only appropriate if, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material

---

[1] Contrary to Defendants' assertion in their response, Dkt. [94] at 1, n.1, Defendant Wakefield was not dismissed as a party defendant. Although the Report and Recommendation had originally recommended that Defendant Wakefield be dismissed because Plaintiff had made no claim that Defendant Wakefield had any knowledge prior to the assault that Plaintiff Reid was at risk of being attacked. As noted in the Memorandum order of Judge Hardiman which adopted in part the Report, Plaintiff cured this deficiency by alleging in his objections that Defendant Wakefield had indeed prior knowledge and the Memorandum Order of Judge Hardiman permitted this claim to go forward. See Dkt. [64] at 3 to 4 ("Plaintiff's complaint does sufficiently state a claim under the theory that Defendant Wakefield failed to protect him from a known risk of attack . . . . I find that his complaint sufficiently alleges such and that the Defendants' motion to dismiss should not be granted as to Defendant Wakefield.").

fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.Proc. 56(c). It is the moving party's burden initially to show or point out why there is no genuine issue of material fact. See, e.g., Mullins v. Crowell, 228 F.3d 1305, 1313-14 (11th Cir. 2000). "Only after the moving party has satisfied that burden does the burden shift to the nonmoving party to demonstrate that summary judgment would be inappropriate because there exists a material issue of fact." Id. In order for the Court to find there are no genuine material factual issues, the Court must be satisfied that no reasonable trier of fact could have found for the nonmoving party or, in other words, that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict for the nonmovant. Anderson v. Liberty Lobby, 477 U.S. 242, 249-50 (1986); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corporation, 475 U.S. 574, 587 (1986). As the Court of Appeals for the Third Circuit declared: "[w]hen the moving party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it ... must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003)(quoting, United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)). If the "moving party with the burden of proof makes such an affirmative showing, [then and only then] it is entitled to summary judgment unless the non-moving party comes forward with probative evidence that would demonstrate the existence of a triable issue of fact." Id.

**Discussion**

*Excessive Force*

Plaintiff's first claim is that Defendants Guzzie, Hoffman, Saylor and Shroyer engaged in excessive force when Plaintiff's cuff came loose and his right hand slipped out of the cuff. To establish an Eighth Amendment excessive force claim, the plaintiff must adduce evidence that the force used was

applied not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm.  Hudson v. McMillian, 503 U.S. 1 (1992).  Furthermore, to prove that the force used was not applied in good faith, the prisoner-plaintiff has the burden of proving that the guard acted without justification.  Davis v. Lane, 814 F.2d 397, 401 (7th Cir.1987) (prisoner alleging Eighth Amendment violation bore burden of proving every element, including that guard acted without justification).

In an attempt to meet this burden Plaintiff offered his own affidavit wherein he stated that six guards approached his cell. Dkt. [91] at 48, ¶ 2.  They were doing so to conduct a cell search.  After being handcuffed and taken out of the cell, Plaintiff stated that while walking to the shower, "my right handcuff open [sic] up from around my wrist, mysteriously."  Dkt. [91] at 48, ¶ 3.  Plaintiff then stated that "[a]s, I approached the first shower, I stood directly in front of the shower with my chest pressed up on the gate and my back towards the six guards [and] my cellmate[.]" Id., ¶5.  Plaintiff then states that "I put my hands up with my palms open facing the inside of the shower stall, I then stated to c/o Guzzie 'my cuff open [sic] up.'  C/O Guzzie just stared at me for at least 45 seconds if not more along with the rest of the C/Os." Id., at ¶ 6.  Plaintiff then asserts that it was at this time that C/O Saylor grabbed Plaintiff from behind and slammed Plaintiff into the shower gate and then Plaintiff was slammed to the floor.  Plaintiff alleges that Corrections Officers Kuhn and Lander at the same time took his cellmate to the floor.

In addition to this evidence, Plaintiff profffered the affidavits of two other inmates: Inmate Barnes, who was Plaintiff's cellmate, and another inmate, Clenzie Grier.  They essentially corroborate Plaintiff's version of there being six guards that came to Plaintiff's cell and escorted Plaintiff and his cellmate to the shower and then allegedly assaulted Plaintiff after the cuff came off.

The Defendants had earlier supplied a DVD recording of the events occurring on October 30, 2005, as well as a video tape of events after Plaintiff was placed in the shower and after the incident.

Dkt. [28]. The events took place in the Restricted Housing Unit which apparently has monitoring cameras running all of the time. Plaintiff himself references the DVD. That DVD shows that there were not six officers that came to Plaintiff's cell as Plaintiff's affidavit recounts, and the affidavits of his fellow prisoners repeats this mistake. Rather, there were five that came to Plaintiff's cell. The DVD shows a shirtless Plaintiff and a shirted cellmate being escorted by these five officers. There are two camera shots, i.e., Camera 14 and Camera 15, along with a running timer at the bottom of the DVD recording. Unfortunately, Camera 14 is a long shot and although it records the events of the incident, given the long shot, it is impossible to see some details of the incident. While Camera 15 provides a closer up shot of part of the events, i.e., the officers escorting Plaintiff and his cellmate out of the cell and down the hall toward the shower, the critical events occur for the most part, just outside of the view of Camera 14. Nevertheless, contrary to Plaintiff's averments that the officers just stared at Plaintiff for 45 seconds after he informed them that his cuffs came off, the DVD shows that the entire beginning of the altercation appears to have begun at 7:57:30 and to have ended, i.e., Plaintiff was placed in the shower at 7:58:33 a total of 1 minute and 3 seconds. Moreover, the DVD shows that a sixth officer did not, literally and figuratively, enter into the picture until about 7:57: 33, when he enters from the door leading into the area (which on the frame of Camera 14, is from the upper left hand side behind a caged area) and by the time that person arrived at the scene, Plaintiff had already been taken down to the floor.

In any event, given the DVD/tape and the facts as described by Plaintiff, the fact that Plaintiff's cuff slipped off his wrist and that he raised his hands in what he described as "an obvious compliance stance" and that this situation created a potential of lack of control over a prisoner, the Court concludes that Plaintiff has not adduced evidence to meet his summary judgment burden to show that the guards acted without justification and that they acted maliciously and sadistically to cause harm, as opposed to

5

acting with the intent to reassert control over a potentially dangerous situation, acting in split second decision making.

Having failed to meet his initial summary judgment burden, which is to say, having failed to demonstrate the lack of a factual dispute about whether the Defendants' actions were malicious and sadistic, the burden never shifted to the Defendants to come forward with their own evidence to show a material factual dispute. On this ground alone, Plaintiff's motion for summary judgment should be denied.

In the alternative, the evidence which the Defendants adduce shows that they perceived Plaintiff to have slipped out of the right cuff and to have taken an aggressive stance toward Officer Guzzie. Dkt. [94-2] at 9 ("Reid slipped his right hand out of the handcuffs and raised his arms up in what appeared to be an attempt to hit CO 1 Guzzie."); Id., at 15 ("While I [i.e., Corrections Officer Guzzie] was opening/unlocking the shower door, Inmate Reid slipped his handcuffs and assumed a defensive position. Inmate Reid was immediately taken to the floor . . . . Inmate had some unknown lotion on his body."); id., at 16 ("Inmate Reid pulled his right hand out of his handcuffs. He raised his right hand standing behind COI Guzzie as COI Guzzie was opening the shower. I [i.e., Officer Saylor] grabbed Inmate[']s right wrist and put it behind his back. I then placed inmate Reid against the shower. Inmate then went to the ground and I secured his right hand in the cuffs"). This evidence supports, at the least, that the Defendants acted with a good faith intent to restore order and not with an intent to inflict pain sadistically and maliciously. Accordingly, Plaintiff's summary judgment motion should be denied for this alternative reason that the evidence pointed to by the Defendants demonstrate a genuine issue of material fact.

### Failure to Protect/Intervene

The court next turns to the failure to protect/intervene claims against Defendants Kuhn and

Lander. Plaintiff's theory is that they observed the allegedly unconstitutional assault and failed to intervene.

> As one court has observed, in order to establish a constitutional violation for failure to intervene,
>
> a plaintiff must establish that: (1) the police officer failed or refused to intervene when a constitutional violation took place in his or her presence or with his or her knowledge and (2) there was a "realistic and reasonable opportunity to intervene." *See Smith v. Mensinger*, 29 F.3d 641, 650-51 (3d Cir.2002)

Fernandez v. Stack, 2006 WL 777033, *12 n.8 (D.N.J. March 27, 2006). Moreover it is the Plaintiff's burden to adduce evidence of both requirements. See, e.g., id. ("a plaintiff must establish. . . ."); Gainor v. Douglas County, Georgia, 59 F.Supp.2d 1259, 1289 (N.D. Ga. 1998)("plaintiff must proffer evidence that the officer in question had a reasonable opportunity to intervene."). Here, Plaintiff's evidence fails to establish that these two officers had a realistic opportunity to intervene. The events transpired so quickly as demonstrated on the DVD recording, i.e., roughly one minute, and the situation was rapidly evolving, such that these two officers appeared to be concerned about maintaining order and control of the situation by assuring Inmate Barnes was controlled by taking him to the ground. Even Plaintiff's own evidence establish that Officers Kuhn and Lander were apparently preoccupied with and concerned about Inmate Barnes. Dkt. [91] at 46, ¶ 8 (while watching the events unfold with respect to Plaintiff, "I [i.e., inmate Barnes] was grabbed from behind [and] lifted off my feet [and] slammed to the floor"); Dkt. [91] at 48, ¶ 8 ("Once I [i.e., Plaintiff] hit the floor I was being choked by Sgt Hoffman, while CO Saylor, Guzzie [and] Shroyer punched and kicked me, 'yelling stop resisting' repeatedly. It was at this time my cellmate Barnes was slammed to the floor."). This evidence proffered by Plaintiff himself, as well as the DVD recording, appears to point to the fact that Officers Lander and Kuhn did not have the time nor the opportunity to intervene. See, e.g., Riley v. Newton, 94 F.3d 632, 635 (11th Cir. 1996) (where officer "had no reason to expect the use of excessive force until after it had occurred, he had no reasonable

opportunity to protect [plaintiff], and the obligation to take steps to protect him never arose."); Long v. Pend Oreille County, 2006 WL 2850011, *10 (E.D. Wash. Oct. 2, 2006)("officers who are present, but who have no opportunity to prevent a sudden and brief assault, may not be held liable for an attack"); Swinyer v. Cole, 2006 WL 1874100, *3 (W.D. Wash. July 6, 2006)("By all accounts, Officer Cole's reaction to the comments made by Mr. Swinyer happened quickly and was short lived. By the time the other officers in the jail realized what was happening, Officer Cole had released his hold on Plaintiff and the incident was over."). Plaintiff has failed to establish a genuine issue of material fact with respect to his failure to protect/intervene claim against Defendants Kuhn and Lander. Having failed to carry his initial burden on summary judgment, the burden never shifted to Defendants to come forward with evidence in opposition to the motion, and for this reason alone, summary judgment should be denied to Plaintiff.

In the alternative, the evidence pointed to by the Defendants establishes that they did not believe they were witnessing a violation of Plaintiff's constitutional rights but a necessary attempt to gain control of a potentially dangerous situation. See Dkt. [94-2] at 11 ("Reid slipped his cuffs and had to be taken to the floor in order to gain control of him. COI Kuhn and I [i.e, Lander] placed Barnes on the floor so he wouldn't bother the officers that were attempting to gain control of Reid."); id., at 12 ("When Inmate Reid slipped his cuffs in front of the shower he was placed on the floor to gain control of him. COI Lander and I [i.e., Kuhn] placed Barnes on the floor so he wouldn't hinder the officers trying to gain control of Reid"). As this evidence suggests that Defendants Lander and Kuhn believed the force used against Plaintiff was necessary and not excessive, there is, at the least, a factual issue concerning whether they acted with the requisite subjective intent to establish a failure to protect claim. See Long v. Pend Oreille County, 2006 WL 2850011, *10 (E.D. Wash. 2006)("Because the force used in this case was not

constitutionally excessive, the other officers [sought to be held liable for failing to intervene] cannot be held liable for failure to intervene or protect.").

Next we consider the claim against Defendant Wakefield who was admittedly not personally involved in the altercation with Plaintiff. Rather, Plaintiff claims that Defendant Wakefield had been forewarned by Plaintiff and/or his family that Plaintiff was going to be attacked. Plaintiff alleges that Defendant Wakefield did nothing to protect Plaintiff.

To the extent that Plaintiff seeks to impose liability on Defendant Wakefield merely on the basis that he was the Defendants' supervisor, Plaintiff's theory seeks to establish liability the grounds of respondeat superior. McClelland v. Facteau, 610 F.2d 693, 695 (10th Cir. 1979)("Respondeat superior is a doctrine of vicarious liability based upon public policy [and] the notion that the person who benefits by the acts of the servant must pay for wrongs committed by the servant; the one held liable as master need not be at fault in any way."). However, Section 1983 does not permit liability premised upon respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("liability [in a civil rights action] cannot be predicated solely on the operation of respondeat superior.").

To the extent that Plaintiff is affirmatively arguing that Defendant Wakefield did or failed to do something as a supervisor that caused him harm, Plaintiff failed to adduce any evidence of such. The Court of Appeals for the Third Circuit set forth the elements of a cause of action based upon supervisory wrongdoing. The Court observed that:

> [i]n Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989), this court identified the elements of a supervisory liability claim. The plaintiff must (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory

> practice or procedure. We emphasized that "it is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did." Sample, 885 F.2d at 1118. Rather, the plaintiff must identify specific acts or omissions of the supervisor that evidence deliberate indifference and persuade the court that there is a "relationship between the 'identified deficiency' and the 'ultimate injury.' " Id.

Brown v. Muhlenburg, 269 F.3d 205, 216 (3d Cir. 2001). Plaintiff's evidence may establish that Defendant Wakefield was aware of the risk that Plaintiff would be assaulted. See Dkt. [91] at 40. However, Plaintiff's own evidence seems to establish that Defendant Wakefield was not deliberately indifferent to the risk. Plaintiff himself notes that when Plaintiff made complaints to Defendant Wakefield about threats, Defendant Wakefield "referred [his complaints] to security or the PRC," [i.e., the Program Review Committee] for investigation. Dkt. [91] at 7. Referring Plaintiff's complaints to appropriate bodies does not exhibit deliberate indifference. For example, Plaintiff points to an interrogatory that he served upon Defendant Wakefield, wherein Plaintiff asked, "Did the security office ever interview the Plaintiff a week before he was assaulted about a grievance he filed on October 23rd 2005 on 2 to 10 shift threatening the plaintiff stating his day would come." Dkt. [91] at 11, ¶ 17. In response, Wakefield answered that "[t]he Security Office did interview inmate Reid as a result of grievance number 133709, dated October 27, 2005, in which he claims verbal abuse. The investigation revealed no evidence to substantiate his claims." Dkt. [91] at 16, ¶ 17. The fact that Defendant Wakefield employed practices where inmates' grievances were investigated, and the fact that it was determined that there was "no evidence to substantiate his claims," and the fact that Defendant Wakefield apparently relied upon the results of the investigation, simply fails to establish that there is no genuine factual dispute over the fourth Sample v. Diecks prong, i.e., that the supervisor was indifferent to the risk. This is true even if the results of the security office's investigation were erroneous, absent evidence that

Defendant Wakefield knew that the results were erroneous. See Farmer v. Brennan, 511 U.S. 825, 837 (1994) (the subjective prong of an Eighth Amendment claim is met when a prison "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." ).[2]  Accordingly, Plaintiff's summary judgment motion should be denied.

*Conditions of Confinement*

Lastly, Plaintiff makes a claim that his stay in a strip cell following the altercation amounted to cruel and unusual conditions of confinement in violation of the Eighth Amendment.  He seeks summary judgment on this claim as well.

The plaintiff bears the burden of proving both the objective and subjective components of an Eighth Amendment claim.  See, e.g., Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001).  The only evidence relevant to this particular claim that Plaintiff adduces in his summary judgment motion and the evidentiary materials attached to his brief is his own affidavit as well as his mothers.  Plaintiff's affidavit establishes that he was "placed in a 'strip cell' for (5) days with no sheets, blanket, hygiene material, toilet facilities or clothing just a pair of underpants."  Dkt. [91] at 49, ¶ 15.  Even if we assume without deciding that this was sufficient to establish no genuine factual dispute with respect to the objective prong of his Eighth Amendment conditions of confinement claim, Plaintiff has pointed to no evidence of record to establish the subjective prong of the Eighth Amendment.  There is no evidence that

---

[2]  This is true notwithstanding Plaintiff's argument that as part of Defendant Wakefield's job duties he had an affirmative duty to "receive and [sic] employe[e] grievances [and] complaints and to resolve them" Dkt. [91] at 7, quoting Dkt. [91] at 30.  First, this duty, as quoted in the Superintendent's job description, refers to grievances filed by employees and not to grievances filed by prisoners about employees.  Even if it were otherwise, it is not deliberate indifference on the part of Defendant Wakefield to delegate those duties to investigate as he sees fit.

establishes that the defendants knew he was in a strip cell.  See, e.g., Dkt.[91] at 13 wherein Plaintiff asks in an interrogatory "why was the Plaintiff placed in a 'strip cell' with no mattress, sheets blanket, clothing or toilet facilities and no cosmetics?"); id., at  17 (Defendant Wakefield's answer wherein he states "[t]his defendant has no recollection of inmate Reid being placed in a 'strip cell'").  Plaintiff points to no other evidence of the remaining defendants' knowledge of his placement in the strip cell, nor their knowledge of the conditions that Plaintiff experienced while there.  Accordingly, Plaintiff has failed to carry his initial summary judgment burden to show a lack of factual dispute about the subjective prong so as to merit the grant of summary judgment.

## CONCLUSION

For the above-stated reasons, Plaintiff's Motion for Summary Judgment, Dkt. [90], should be denied.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are permitted to file written objections on _____ and responses thereto in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections may constitute waiver of any appellate rights.

Respectfully submitted,

*/s/  Amy Reynolds Hay*
United States Magistrate Judge


Dated:  10 March, 2008

cc:     Honorable Nora Barry Fischer
        United States District Judge

Steven Reid
FW-5868
SCI Greene
175 Progress Drive
Waynesburg, PA 25370


All counsel of record by Notice of Electronic Filing